PTG /WBP

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

Michael J. Matias,

               Plaintiff,

    v.

Loudoun County, Virginia;
Sheriff Michael Chapman, in his individual and official capacities; and
Archibald Cox, in his individual and official capacities,

               Defendants.

Civil Action No. 1:26-cv-1467

---

### FIRST AMENDED COMPLAINT

Plaintiff Michael J. Matias ("Plaintiff" or "Matias"), proceeding pro se, brings this First Amended Complaint against Defendants Loudoun County, Virginia ("Loudoun County"), Sheriff Michael Chapman ("Sheriff Chapman" or "Chapman"), and Archibald Cox ("Cox") (collectively, "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1. This is an action for race and national origin discrimination, hostile work environment, retaliation, and related civil rights violations. Plaintiff, a Hispanic law enforcement officer formerly employed by the Loudoun County Sheriff's Office, complained of racial discrimination and racism directed at minority officers, including himself. Rather than investigate those complaints, Defendants subjected Plaintiff to years of escalating retaliatory discipline and a racially hostile work environment, terminated his employment, and procured the de-certification of his law enforcement credentials. The de-certification remains in effect and continues to bar Plaintiff from employment in his profession.

2. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; and 42 U.S.C. § 1983 for violations of the Equal Protection Clause and the First Amendment to the United States Constitution.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, including Title VII, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1983.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Loudoun County, Virginia, which lies within the Alexandria Division of the Eastern District of Virginia.

5. Plaintiff has exhausted his administrative remedies. On July 30, 2025, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, Charge No. 570-2025-02775, naming the Loudoun County Sheriff's Office as respondent. The Office of the Loudoun County Attorney received notice of the charge and appeared on behalf of the respondent. There is an identity of interest between the named respondent and both Sheriff Chapman, who heads that office, and Loudoun County, which jointly administered the personnel functions at issue. Both had actual notice of the charge and an opportunity to participate in conciliation, and neither is prejudiced by the caption of the charge. The charge alleged discrimination based on race and national origin. On March 8, 2026, the EEOC issued a Determination and Notice of Rights. This action was commenced within ninety days of Plaintiff's receipt of that notice.

## THE PARTIES

6. Plaintiff Michael J. Matias is a natural person and a resident of East Meadow, New York. Plaintiff is a Hispanic male and is a member of a protected class by reason of both his race and his national origin. From on or about January 12, 2017 until November 4, 2024, Plaintiff was employed by the Loudoun County Sheriff's Office as a sworn law enforcement officer, most recently holding the rank of Deputy First Class (DFC).

7. Defendant Loudoun County, Virginia is a political subdivision of the Commonwealth of Virginia. Loudoun County maintains the Human Resources Department that received, processed, and directed the disposition of Plaintiff's discrimination complaint, administered personnel functions for the Sheriff's Office, and, together with the Sheriff, exercised sufficient control over the terms and conditions of Plaintiff's employment to constitute a joint employer of Plaintiff within the meaning of Title VII. Loudoun County is also a person subject to suit under 42 U.S.C. § 1983.

8. Defendant Michael Chapman is the duly elected Sheriff of Loudoun County and a constitutional officer of the Commonwealth of Virginia. At all relevant times, Sheriff Chapman was the chief executive officer of the Loudoun County Sheriff's Office, with final policymaking authority over personnel decisions, discipline, and employment matters, and was Plaintiff's employer within the meaning of Title VII. Sheriff Chapman is sued in his individual capacity for damages and in his official capacity for declaratory and injunctive relief.

9. Defendant Archibald Cox was, at all relevant times, a Human Resources representative employed by Loudoun County Government with authority over the intake and routing of employee discrimination complaints concerning the Sheriff's Office. Plaintiff brought formal complaints of racial discrimination to Cox, who refused to arrange an independent investigation and instead returned the complaint to the Sheriff's Office's own Internal Affairs unit. Cox is sued in his individual capacity for damages and in his official capacity for declaratory and injunctive relief.

## FACTUAL ALLEGATIONS

*A. Plaintiff's Employment and Satisfactory Job Performance*

10. Plaintiff was hired by the Loudoun County Sheriff's Office on or about January 12, 2017 and served continuously as a sworn law enforcement officer until his termination in November 2024.

11. Throughout his employment, Plaintiff performed his duties satisfactorily and met the legitimate expectations of the Sheriff's Office. Plaintiff received performance evaluations rating his work as satisfactory or better, including his evaluations for the years 2017 through 2024, and received two Meritorious Service Awards and a Bronze Valor Award.

12. Prior to September 2020, Plaintiff had not been the subject of any significant discipline.

*B.  Plaintiff's Protected Complaint to Major Dondero*

13. In or about September 2020, Plaintiff made an internal complaint to Major Kenneth Dondero regarding workplace discrimination and racism directed at minority officers, including Plaintiff himself.

14. Plaintiff reported, among other things,

- Starting in 2017 Plaintiff and his brother Jeffrey Matias were not allowed to work on the same shift because LCSO command staff said it was a conflict of interest. Caucasian relatives were allowed to work the same shifts (e.g. Neff brothers, Campbell husband and wife).

- During an informal meeting LCSO Headquarters Major Dondero told plaintiff to stop complaining and look around that this was a predominantly "white agency".

- Plaintiff applied to the Civil Disturbance Unit several time and was never selected because the selections were made by LCSO command by appointment. The majority of the deputies selected were Caucasian.

- Plaintiff was passed over three times for transfer from the Correctional Division to the Field Operations Division. Twice by Deputy Sowers once by Deputy Hancock both of Caucasian descent.

- During Hurricane Maria relief efforts Plaintiff and other Latino deputies volunteered to assist in a disaster campaign clean up funded by FEMA all were denied, soon after during a smaller hurricane disaster in Florida command sent several Caucasian Deputies also funded by FEMA.

- The majority of minorities working in LCSO are hired for Correctional Division rather than Field Operations, even if those applicants came with higher education or prior experience in law enforcement.

15. Plaintiff's complaint to Major Dondero constituted protected activity under Title VII and protected speech under the First Amendment to the United States Constitution.

16. Plaintiff's complaint was never investigated, addressed, or resolved by the Sheriff's Office.

C. *Escalating Discipline and Disparate Treatment*

17. Almost immediately after Plaintiff made his complaint to Major Dondero, and continuing until his termination, the Sheriff's Office subjected Plaintiff to disproportionate discipline. Under the direction and with the approval of Sheriff Chapman, Plaintiff received extensive discipline for minor policy infractions for which similarly situated Caucasian colleagues were not disciplined, or for which they received markedly lesser discipline.

18. By way of example and not limitation,

- Plaintiff was written up by Sgt. Isham for an overtime assignment after he was given verbal permission by him to do the assignment.

- Plaintiff was threatened several times to resign without the completion of the Internal Affairs investigation and being placed on a "Giglio List" informally.

19. Caucasian officers who committed the same or comparable infractions were not disciplined at all or received materially lesser discipline. By way of example and not limitation,

- Plaintiff was written up several times for overtime General Order violations, at the same time Lt. Lowder stated via a group text that he would waive Caucasian Deputies who reached maximum hours.

- Plaintiff was given a written reprimand for an incident when he was not the primary deputy on scene and was only assisting. The primary Deputy Anthony Cooper ( a Caucasian) was not disciplined for making an incorrect decision which was captured on body camera.

- Plaintiff was terminated after being placed on a "Giglio List" meaning he could not be used any longer. Deputies Huang, Moore and Poland were all placed on a "Giglio List" and were afforded opportunities to remain in LCSO.

20. Comparators held the same or comparable rank as Plaintiff, were subject to the same disciplinary standards and the same chain of command, and engaged in conduct of comparable seriousness, but were not disciplined.

21. Plaintiff was disciplined outside the parameters of the Sheriff's Office's own adopted General Order disciplinary guidelines, including by being subjected to multiple punishments for a single policy infraction.

22. The discipline imposed on Plaintiff included loss of pay, written reprimands placed in his personnel file, and suspensions, and was accompanied by the denial of overtime opportunities and career advancement that were made available to Caucasian officers with equal or lesser seniority.

### D. Hostile Work Environment

23. Plaintiff was subjected to unwelcome conduct because of his race and national origin, including,

- Lt. Holmes questioned Plaintiff's handling of an incident captured on Body Camera and stated, "How can I put this; you came off too New Yorkish"'.

24. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment. Plaintiff perceived the environment to be abusive, and a reasonable person in Plaintiff's position would have perceived it to be abusive.

25. The conduct is imputable to Plaintiff's employer. Supervisory personnel participated in and directed the conduct, and the Sheriff's Office and Loudoun County were placed on actual notice of it by Plaintiff's September 2020 complaint to Major Dondero and by his subsequent complaint to Loudoun County Human Resources, yet took no corrective action.

26. The hostile work environment continued without interruption from 2020 through Plaintiff's termination, and included conduct occurring on and after October 3, 2024, namely,

- Deputy First Class Blackall a Caucasian was never investigated for his involvement in the case that led to Plaintiff's termination. Deputy Blackwell had the same level of direct involvement in the handling of crucial evidence in that case.

27. On or about September 2020, as the hostile work environment intensified, Plaintiff escalated his complaints by bringing them directly to the Human Resources Department of Loudoun County Government and requesting a formal investigation by an impartial outside source.

28. Plaintiff presented his complaints to Defendant Archibald Cox, a Loudoun County Human Resources representative.

29. Cox informed Plaintiff that Loudoun County Human Resources worked in conjunction with the Sheriff's Office administration to administer any investigations regarding the Sheriff's Office.

30. Plaintiff explained to Cox, in the presence of Lieutenant Daniel Selby of the Sheriff's Office Internal Affairs section, that it would be improper for the Sheriff's Office to investigate complaints directed at its own administration, and that Plaintiff was seeking an impartial outside investigation.

31. Cox refused to arrange an independent investigation, returned the complaint to the very administration Plaintiff had complained about, and refused to take any action to protect Plaintiff from further retaliation.

32. Following Plaintiff's complaint to Cox, the discipline directed at Plaintiff intensified.

- Plaintiff began receiving documented discipline as of September 2020. He had not received any discipline prior to that date.

   *E.  Termination and De-Certification*

33. On or about November 4, 2024, Defendants terminated Plaintiff's employment. The reason given for the termination was that he had submitted evidence without consent from suspect.

34. The stated reason for Plaintiff's termination was false and pretextual. Caucasian officers who engaged in the same or more serious conduct were not terminated. Deputy First Class Blackall was Plaintiff's partner at the incident which led to his termination and was not investigated for submitting evidence without consent.

35. In or about November 7, 2025, Defendants reported Plaintiff to the Virginia Department of Criminal Justice Services and thereby procured or caused the de-certification of Plaintiff's law enforcement credentials. The report contained false statements concerning Plaintiff.

36. The termination and the de-certification were motivated by Plaintiff's race and by his protected complaints of discrimination.

37. The de-certification remains in effect and continues to bar Plaintiff from employment as a law enforcement officer. The retaliatory discipline likewise remains in Plaintiff's personnel file and continues to be disclosed to prospective employers.

*F. Continuing Harm*

38. Since November 2024, Plaintiff has applied for law enforcement and civilian employment and has been denied every position for which he applied.

- Bimbo Bakeries 2025

- Ferraro Food 2025

- Restaurant Technologies 2025

- US Post Office 2025

- US Capitol Police 2026

- US Immigration Customs Enforcement 2026

- US Park Police 2026

39. The de-certification of Plaintiff's law enforcement credentials disqualifies him from employment as a sworn officer in the Commonwealth of Virginia and impairs his ability to obtain law enforcement employment elsewhere.

**FIRST CAUSE OF ACTION**
*Race and National Origin Discrimination in Violation of Title VII*
*(Against Loudoun County and Sheriff Chapman in His Official Capacity)*

40. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

41. Plaintiff is Hispanic and is a member of a protected class by reason of his race and his national origin.

42. Plaintiff's job performance was satisfactory and met the legitimate expectations of his employer.

43. Loudoun County and Sheriff Chapman, as Plaintiff's employer and joint employer, discriminated against Plaintiff because of his race and national origin in the terms, conditions, and privileges of his employment, including by subjecting him to disparate discipline, denying him overtime opportunities and career advancement, suspending him, terminating his employment, and procuring the de-certification of his law enforcement credentials.

44. Similarly situated employees outside of Plaintiff's protected class engaged in the same or comparable conduct and were treated more favorably.

45. Defendants' conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

46. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer monetary and compensatory damages, including lost wages, lost benefits, lost earning capacity, and emotional distress, pain, suffering, humiliation, and mental anguish, in amounts to be determined at trial.

**SECOND CAUSE OF ACTION**
*Hostile Work Environment in Violation of Title VII*
*(Against Loudoun County and Sheriff Chapman in His Official Capacity)*

47. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

48. Plaintiff was subjected to unwelcome conduct in the workplace.

49. The conduct was based on Plaintiff's race and national origin.

50. The conduct was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment.

51. The conduct is imputable to Plaintiff's employer, which participated in it through its supervisory personnel and which, after receiving actual notice, failed to take any corrective action.

52. The hostile work environment constituted a single unlawful employment practice that continued into the limitations period, including conduct occurring on and after October 3, 2024, and Plaintiff may therefore recover for the entire period of the hostile environment.

53. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer monetary and compensatory damages, including lost wages, lost benefits, lost earning capacity, and emotional distress, pain, suffering, humiliation, and mental anguish, in amounts to be determined at trial.

**THIRD CAUSE OF ACTION**
*Retaliation in Violation of Title VII*
*(Against Loudoun County and Sheriff Chapman in His Official Capacity)*

54. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

55. Plaintiff engaged in protected activity by complaining of workplace discrimination and racism directed at minority officers, first to Major Dondero in September 2020 and again to Loudoun County Human Resources on or about September 2020 and thereafter.

56. Following Plaintiff's protected activity, Defendants subjected Plaintiff to adverse employment actions, including escalating and disproportionate discipline, loss of pay, denial of overtime, denial of career advancement, written reprimands, suspensions, termination of employment, and de-certification of his law enforcement credentials.

57. A causal connection exists between Plaintiff's protected activity and the adverse actions. The retaliation began almost immediately after Plaintiff's initial complaint, continued without interruption, intensified after each renewed complaint, and culminated in Plaintiff's

termination and de-certification. The four years between Plaintiff's first complaint and his termination were not a period of quiescence but a continuous course of retaliatory treatment.

58. Defendants' conduct violated Title VII, 42 U.S.C. § 2000e-3(a).

59. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer monetary and compensatory damages, including lost wages, lost benefits, lost earning capacity, and emotional distress, pain, suffering, humiliation, and mental anguish, in amounts to be determined at trial.

## FOURTH CAUSE OF ACTION
### *Violation of 42 U.S.C. § 1983, Equal Protection*
*(Against Sheriff Chapman and Archibald Cox in Their Individual Capacities, and Against Sheriff Chapman in His Official Capacity for Declaratory and Injunctive Relief)*

60. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

61. At all relevant times, each Defendant acted under color of state law.

62. Defendants intentionally discriminated against Plaintiff because of his race and national origin in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, by subjecting him to discriminatory discipline, denying him equal terms and conditions of employment, terminating his employment, and procuring the de-certification of his law enforcement credentials, while treating similarly situated Caucasian officers more favorably.

63. Sheriff Chapman was personally involved in the conduct alleged. He directed, approved, and ratified the discipline imposed on Plaintiff, made or approved the decision to terminate Plaintiff, and authorized the report that resulted in Plaintiff's de-certification.

64. Cox was personally involved in the conduct alleged. He received Plaintiff's complaint of racial discrimination, refused to arrange an impartial investigation, returned the complaint to the officials Plaintiff had accused, and thereby permitted the discriminatory treatment to continue.

65. Sheriff Chapman exercised final policymaking authority over the personnel decisions at issue.

66. The violation is ongoing. The de-certification procured by Defendants remains in effect, and the retaliatory discipline remains in Plaintiff's personnel file and continues to be disclosed to prospective employers. Plaintiff seeks declaratory and injunctive relief against Sheriff Chapman in his official capacity to remedy that continuing violation, and does not seek damages from any Defendant in his official capacity.

67. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer monetary and compensatory damages, including lost wages, lost benefits, lost earning capacity, and emotional distress, pain, suffering, humiliation, and mental anguish, in amounts to be determined at trial.

## FIFTH CAUSE OF ACTION
*Violation of 42 U.S.C. § 1983, First Amendment Retaliation*
*(Against Sheriff Chapman and Archibald Cox in Their Individual Capacities, and Against Sheriff Chapman in His Official Capacity for Declaratory and Injunctive Relief)*

68. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

69. Plaintiff spoke as a citizen on a matter of public concern. Plaintiff's complaints reported discriminatory treatment of minority officers within a public law enforcement agency, a subject of legitimate and inherent concern to the community that agency serves. Plaintiff's complaints were not confined to his own treatment; he reported racism directed at minority officers generally.

70. Plaintiff's speech was not made pursuant to his ordinary job duties as a sworn officer. Reporting discrimination within the agency was no part of Plaintiff's official responsibilities, and Plaintiff carried his complaint outside the Sheriff's chain of command to the Human Resources Department of Loudoun County Government.

71. Plaintiff's interest in speaking on these matters outweighed any interest Defendants had in promoting the efficiency of the public services they perform. Plaintiff's complaints did not disrupt agency operations, and Defendants identified no disruption at the time.

72. Plaintiff's protected speech was a substantial factor in the adverse actions taken against him, including escalating discipline, denial of overtime and advancement, suspension, termination, and de-certification.

73. Defendants' conduct violated the First Amendment to the United States Constitution, as incorporated through the Fourteenth Amendment.

74. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer monetary and compensatory damages, including lost wages, lost benefits, lost earning capacity, and emotional distress, pain, suffering, humiliation, and mental anguish, in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and award the following relief:

(a) A declaratory judgment that Defendants' actions violated Title VII, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. § 1983;

(b) Compensatory damages, including back pay, front pay, lost benefits, and lost earning capacity, in amounts to be determined at trial;

(c) Compensatory damages for emotional distress, pain, suffering, humiliation, and mental anguish, in amounts to be determined at trial;

(d) Punitive damages against the Individual Defendants in their individual capacities, in amounts to be determined at trial;

(e) Pre-judgment and post-judgment interest as allowed by law;

(f) Reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988 and Title VII, 42 U.S.C. § 2000e-5(k);

(g) Reinstatement or, in the alternative, front pay in lieu of reinstatement;

(h) An order directing Defendants to expunge from Plaintiff's personnel file the retaliatory discipline described herein, and to correct or withdraw the report submitted to the Virginia Department of Criminal Justice Services that resulted in Plaintiff's de-certification; and

(i) Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 4, 2026
     East Meadow, New York

Respectfully submitted,

Michael J. Matias
252 Bernice Drive
East Meadow, NY 11554
(516) 410-1208
m.matias5@yahoo.com
Plaintiff Pro Se

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2026, a true and correct copy of the foregoing First Amended

Complaint was served by first-class mail, postage prepaid, upon:

    Debra S. Stafford, Esq.
    Karson H. Lyon, Esq.
    Hudgins Law Firm, PC
    2331 Mill Road, Suite 100
    Alexandria, VA 22314
    Counsel for defendant Sheriff Michael Chapman

Michael J. Matias
Plaintiff Pro Se